UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

D.S.,

                    Plaintiff,

   -v-

CITY OF PEEKSKILL, EUGENE S. TUMOLO, WESTCHESTER COUNTY, and NEUFELD SCHECK & BRUSTIN, LLP,

                    Defendants.

Case No. 12-CV-4401 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances</u>:

Steven M. Warshawsky, Esq.
Law firm of Steven M. Warshawsky
New York, NY
*Counsel for Plaintiff*

Kyle C. McGovern, Esq.
Desmond C.B. Lyons, Esq.
Lyons McGovern, LLP
White Plains, NY
*Counsel for Defendant*
*County of Westchester*

Peter A. Meisels, Esq.
John M. Flannery, Esq.
Lalit K. Loomba, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
White Plains, NY
*Counsel for Defendant*
*City of Peekskill*

KENNETH M. KARAS, District Judge:

Plaintiff D.S. brings this § 1983 action against City of Peekskill, Eugene S. Tumolo, Westchester County, and Neufeld Scheck & Brustin, LLP (collectively, "Defendants") alleging disclosure of Plaintiff's sealed criminal record in violation of § 160.50 of the New York Criminal Procedure Law. Presently before this Court are motions to dismiss filed by Defendants City of Peekskill and Westchester County, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, Defendants' motions are granted and the case is dismissed without prejudice.

I. Background

A. Factual Background

Except where otherwise noted, the following facts are drawn from Plaintiff's Complaint and are taken as true for the purposes of resolving the instant Motion.

In September 1989, when Plaintiff was seventeen years old, he was arrested by the City of Peekskill Police Department and charged with the crime of rape in the first degree. (Compl. ¶ 10 (Dkt. No. 1).) Subsequent blood-type analysis and DNA testing exonerated Plaintiff, resulting in the dismissal of the indictment and the sealing of the related records pursuant to New York Criminal Procedure Law § 160.50 ("§ 160.50").[1] (*See id.* ¶¶ 13–17.) These records remained sealed for the next twenty years, until the alleged disclosures giving rise to the instant Action. (*Id.* ¶ 21.)

---

[1] Section 160.50 provides, in relevant part, that "[u]pon the termination of a criminal action or proceeding against a person in favor of such person . . . the record of such action or proceeding shall be sealed." N.Y. C.P.L. § 160.50(1). Furthermore, "all official records and papers . . . relating to the arrest or prosecution . . . on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency." *Id.* § 160.50(1)(c).

In December 2009, as part of discovery in the case of *Jeffrey Deskovic v. City of Peekskill*,[2] counsel for Deskovic sought production of documents related to investigations of sexual assaults in Peekskill from 1986 to 1992, including documents from the Peekskill police department. (*Id.* ¶ 24.) The sealed police file in Plaintiff's case was produced along with other documents responsive to these requests. (*Id.* ¶ 25.)

Plaintiff became aware that documents related to his arrest had been released when Deskovic's counsel contacted Plaintiff to inquire about possible similarities between the two cases. (*Id.* ¶ 28.) Plaintiff refused to discuss his case, rebuffed Deskovic's counsel's request for authorization to obtain his sealed criminal records, and declined to waive attorney–client privilege over the Legal Aid Society of Westchester County's defense file. (*Id.* ¶¶ 28–32.)

Deskovic's counsel successfully obtained the sealed crime-laboratory records (maintained in Westchester County) in Plaintiff's case without Plaintiff's consent. (*Id.* ¶¶ 33–35.) Deskovic's counsel then used the disclosed information—including the existence of Plaintiff's record itself—to request in Westchester County Court that Plaintiff's criminal records be unsealed. (*Id.* ¶ 36.) Both Plaintiff and the District Attorney's Office opposed the motion. (*Id.* ¶ 41.) The Legal Aid Society and the Westchester County District Attorney's office submitted letters to the court denying responsibility for the disclosure of any sealed materials to Deskovic's counsel. (*Id.* ¶¶ 39–40.) The court denied the motion to unseal all of Plaintiff's criminal records, (*id.* ¶ 42), but Plaintiff nonetheless argues that the disclosure of his sealed criminal records to Deskovic's counsel has caused him "tremendous mental and emotional

---

[2] *Deskovic* is a civil suit pending before this Court in which Mr. Deskovic seeks damages related to his wrongful conviction and incarceration. *See Jeffrey Deskovic v. City of Peekskill*, No. 07-CV-8150 (S.D.N.Y. filed Sept. 18, 2007).

distress, harmed his relationship with his fiancée, created difficulties with his employer, and forced [him] to incur considerable personal and financial burdens trying to undo the damage caused by the defendants' misconduct." (Pl.'s Mem. of Law in Opp'n to Defs.' Mots. To Dismiss at 1.)

B. Procedural History

Plaintiff filed a Complaint on June 5, 2012, asserting violations of his rights to procedural due process, substantive due process, and privacy, and requesting a protective order. (Compl.) The Complaint names as Defendants the City of Peekskill, Eugene S. Tumolo (Chief of Police of the City of Peekskill's police department ), Westchester County, and Neufeld Scheck & Brustin. The Parties subsequently agreed to dismiss Defendants Eugene S. Tumolo and Neufeld Scheck & Brustin with prejudice. (Dkt. Nos. 27, 28.) Both remaining Defendants, the City of Peekskill and Westchester County, have filed motions to dismiss. (Dkt. Nos. 31, 34.) As part of his response to Defendants' Motions, Plaintiff stipulated to the voluntary dismissal of his substantive-due-process claim and his right-to-privacy claim. (*See* (Pl.'s Mem. of Law in Opp'n to Defs.' Mots. To Dismiss at 2.) Therefore, the Court will address only Plaintiff's procedural-due-process claim and his related request for injunctive relief in the form of a protective order. (*See id.* at 2–3.)

## II. Discussion

A. Standard of Review

In considering Defendants' Motions To Dismiss pursuant to Rule 12(b)(6), the Court is required to construe the factual allegations contained in the Complaint as true. *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the

4

complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (third alteration in original) (citations omitted). Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

5

pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

B.  Analysis

To state a claim under § 1983, Plaintiff "must allege a violation of [a] right[] secured by the Constitution or laws of the United States, and that such violation was committed by a person acting under the color of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996);*see also Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004);. Plaintiff claims that Defendants' alleged disclosure of his sealed criminal records in breach of § 160.50 violated his Fourteenth Amendment right to procedural due process.  (Compl. ¶¶ 48–50.)

To state a procedural-due-process claim, a plaintiff must "identify a constitutionally protected property or liberty interest and demonstrate that the government has deprived [the plaintiff] of the interest without due process of law."  *See Weinstein v. Albright*, 261 F.3d 127, 134 (2d Cir. 2001).  Procedural protections merit constitutional protection only when they serve the purpose of protecting a distinct constitutionally protected liberty interest.  *Watson v. City of New York*, 92 F.3d 31, 38 (2d Cir. 1996) ("'[P]rocess is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.'" (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983))); *Grandal v. City of New York*, 966 F. Supp. 197, 200 (S.D.N.Y. 1997) (same).  In many circumstances, "a state rule of criminal procedure . . . does not create a liberty interest that is entitled to protection under the federal Constitution."  *See Watson*, 92 F.3d at 37–38.  The core question addressed by Defendants' Motions is whether § 160.50 creates a protectable liberty or property interest.

Section 160.50 is part of a statutory scheme designed to protect individuals from certain adverse consequences of criminal actions terminated in their favor.  *See Grandal*, 966 F. Supp. at

201) ("[N]o individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law."). The New York Legislature advanced this goal with concurrently enacted § 160.60, which provides that a favorably terminated criminal prosecution "shall not operate as a disqualification of any person so accused to pursue or engage in any lawful activity, occupation, profession, or calling," and prohibits inquiry into such prosecution. *See* N.Y. C.P.L. § 160.60. The Legislature created further protection by making it an unlawful discriminatory practice for any person or agency to inquire into a favorably terminated criminal action or take any adverse action in connection with such action in regard to licensing, hiring for employment, or providing credit or insurance to an individual. *See* N.Y. Exec. Law § 296(16). New York law gives effect to these protections in the form of procedure for filing a complaint related to the aforementioned discriminatory practices. *See* N.Y. Exec. Law §§ 296(16), 297 et seq.

Given this legislative background, the New York Court of Appeals has made clear that § 160.50 does not protect a constitutional liberty interest, but instead provides a measure of protection to persons accused but not convicted of a crime in their "pursuit of employment, education, professional licencing and insurance opportunities." *See People v. Patterson*, 587 N.E.2d 255, 257 (N.Y. 1991); *see also Charles Q. v. Constantine*, 650 N.E.2d 839, 841 (N.Y. 1995) (reaffirming the determination made in *Patterson* that "a violation of CPL 160.50 does not implicate constitutional considerations" (internal quotation marks omitted)). This protective procedure is much more limited than the broad right to privacy that Plaintiff asks the Court to draw from § 160.50. *See Grandal*, 966 F. Supp. at 201–02 (finding § 160.50 protections limited to employment, education, professional licensing, and insurance contexts, and rejecting an argument that the section protects a broader privacy right). Indeed, the Court of Appeals in

*Patterson* explicitly found that "a review of the legislative history of CPL 160.50 and related statutes enacted at the same time lead inevitably to the conclusion that the nature of that statutory remedy is unrelated to any Fourth or Fifth Amendment protections," which, of course, include procedural due process. 587 N.E.2d at 256.

Courts in the Second Circuit have heeded the clear guidance from *Patterson* in determining the scope of the protections provided by § 160.50. For example, in *Rodriguez v. Winski*, No. 12-CV-3389, 2013 WL 5379880 (S.D.N.Y. Sept. 26, 2013), the court held that the rights of arrestees provided by § 160.50 are "purely statutory in nature and [do] not implicate constitutional concerns." *Id.* at *11 n.6. The court found that because constitutional concerns were not implicated, "the violation of [§ 160.50] [did] not provide grounds for a § 1983 claim." *Id.* Similarly, in *Grandal*, a photograph of the plaintiff, which had been ordered to be returned to him pursuant to § 160.50, was used several years later to identify, and subsequently charge, him in an unrelated case. 966 F. Supp. at 199–200. The plaintiff was later acquitted of this second charge and brought a § 1983 action against the City of New York and the current and former Commissioners of the New York City Police Department based on the alleged § 160.50 violation. *Id.* The court confirmed that, "in order to merit constitutional protection, a procedure must protect a substantive interest to which an individual has a legitimate claim of entitlement." *Id.* at 200. After examining the legislative history of § 160.50, the court held that the purpose of this section was "to afford protection to the accused in the pursuit of employment, education, professional licencing and insurance opportunities," and that this protection "does not implicate fundamental constitutional interests or considerations." *Id.* at 201 & n.6 (quoting *Patterson*, 78 N.Y.2d at 715, 718 (internal quotation marks omitted). This view has been shared by every court to have considered, after *Patterson*, whether § 160.50 protects any constitutionally cognizable

interest. *See Palacio v. Goord*, 338 F. App'x 37, 38 (2d Cir. 2009) (holding that "a violation of [§ 160.50] does not create a cognizable cause of action under [§ 1983]"); *Martinez v. City of New York*, No. 12-CV-3806, 2012 WL 4447589, at *4 (E.D.N.Y. Sept. 25, 2012) ("[Section] 160.50 does not implicate constitutional considerations. . . . Since *Patterson*, no federal court has recognized a § 1983 claim based on a violation of § 160.50. . . . Plaintiff, therefore, has failed to plead a violation of a constitutional right . . . ." (internal quotation marks, alterations, and citations omitted)); *Chatmon v. Mance*, No. 07-CV-9655, 2011 WL 5023243, at *6 (S.D.N.Y. Oct. 20, 2011) ("The New York Court of Appeals has concluded that a violation of [§ 160.50] does not implicate constitutional considerations. . . . Because an alleged violation of [§ 160.50] does not implicate constitutional considerations, Petitioner's Fourteenth Amendment rights were not violated . . . ." (internal quotation marks and citations omitted)); *Reeb v. Woods*, 751 F. Supp. 2d 484, 490 (W.D.N.Y. 2010) (holding that § 160.50 "does not implicate a defendant's federal or state constitutional rights"); *Palacio v. Goord*, No. 03-CV-0836, 2008 WL 87551, at *2 (N.D.N.Y. Jan. 7, 2008) ("[C]laims under [§§] 160.50 and 160.60 do not raise an issue of constitutional dimension so as to support a [§] 1983 claim. A violation of [§ 160.50] does not implicate constitutional considerations."), *aff'd*, 338 F. App'x 37 (2d Cir. 2009).

Plaintiff urges the Court to either ignore or reject these decisions and instead to follow *Anderson v. City of New York*, which found § 160.50 to create a liberty interest in reputation or privacy. 611 F. Supp. 481, 488 (S.D.N.Y. 1985). Plaintiff argues that the courts in the Second Circuit to consider this issue after *Anderson*—which have all held that § 160.50 violations do not provide a basis for a § 1983 claim—failed to properly identify the liberty interest protected by § 160.50 and that *Anderson*'s analysis should control. (Pl.'s Mem. of Law in Opp'n to Defs.' Mots. To Dismiss at 12.) To the contrary, subsequent decisions suggest that the analysis in

*Anderson* has been superceded by *Patterson* and that its holding is no longer persuasive. *See Schiller v. City of New York*, No. 04-CV-7922, 2008 WL 200021, at *8 (S.D.N.Y. Jan. 23, 2008) (noting that "subsequent decisions . . . have cast doubt on the holding in [*Anderson*]"), *adopted by* 2009 WL 497580 (S.D.N.Y. Feb. 27, 2009); *Sylvester v. City of New York*, 385 F. Supp. 2d 431, 440 (S.D.N.Y. 2005) (noting that "there is reason to question the continuing vitality of *Anderson*"). The Court joins these courts and finds that *Anderson* has lost its persuasive authority.

First, the court in *Anderson* relied on the approach for identifying state-created liberty interests articulated in *Hewitt v. Helms*, 459 U.S. 460 (1983). 611 F. Supp. at 489. In *Hewitt*, the Supreme Court held that, when state regulations go "beyond simple procedural guidelines" and use "language of an unmistakably mandatory character," "the State has created a protected liberty interest." 459 U.S. at 471–72. The *Hewitt* method for identifying liberty interests thus focuses on the mandatory language of the statute rather than the nature of the deprivation suffered by plaintiffs. *See Sandin v. Conner*, 515 U.S. 472, 479–80 (1995). However, this framework was abandoned in *Sandin*, which held that the *Hewitt* approach had "strayed from the real concerns undergirding the liberty protected by the Due Process Clause," and advocated a "return to the due process principles . . . established" in the Court's opinions prior to *Hewitt*; which looked for an underlying substantive right rather than mandatory statutory language*. Id.* at 478–79. Thus, after *Sandin*, courts no longer are to identify protectable liberty interests in a state statute merely because it contains mandatory language. *See Rodriguez v. McLoughlin*, 214 F.3d 328, 339 (2d Cir. 2000) ("[T]he fact that a state has established procedures to be followed does not mean that it has created a protectable liberty interest."). Rather, the mandated procedure must safeguard an identified liberty interest. *See id.* at 339 ("[A] statute that merely establishes procedural

10

requirements does not thereby create a liberty interest, because an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." (internal quotation marks omitted)); *Grandal*, 966 F. Supp. at 200 ("[I]n order to merit constitutional protection, a procedure must protect a substantive interest to which an individual has a legitimate claim of entitlement."). As the Supreme Court has explained, a state "may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . . but in making that choice the state does not create an independent substantive right." *Olim*, 461 U.S. at 251.

And, so it is here. As noted, New York enacted § 160.50 along with other provisions to safeguard the specific interest in preventing discrimination against those whose criminal cases ended favorably. *Patterson*, 587 N.E.2d at 257. In so doing, New York did not provide a broader or more general liberty or property interest. *Id*.

Plaintiff counters that *Patterson* and *Charles Q.* addressed only certain constitutional claims and do not preclude due process claims under the Fourteenth Amendment. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss at 22.) He encourages the Court to consider the entirety of *Patterson*'s holding—that "the infringement of [§ 160.50] does not implicate constitutional considerations *such as to require the sanction of suppression*," 587 N.E.2d at 257 (emphasis added)—and interpret the infrequently quoted "such as" clause to be restrictive rather then expository. But *Patterson* also held that § 160.50 did not trigger any Fifth Amendment rights, which, of course, include the right to procedural due process. 587 N.E.2d at 256. This Court declines Plaintiff's invitation to adopt this strained reading of *Patterson* in the absence of any indication from the New York Court of Appeals (or any other court) that such meaning was

intended and in defiance of the clear weight of authority to the contrary developed over the last two decades.

Even if the Court were to adopt Plaintiff's novel reading of *Patterson* as not precluding § 1983 claims, the New York Court of Appeals' discussion of § 160.50 makes it clear that any liberty interest protected by the sealing statute is limited to protection of the accused from discrimination in the context of employment, education, professional licencing and insurance opportunities. *See Grandal*, 966 F. Supp. at 201 ("By enacting [§ 160.50], the Legislature sought to afford protection to the accused in the pursuit of employment, education, professional licensing and insurance opportunities." (internal quotation marks omitted) (citing *Patterson*, 587 N.E.2d at 257)). Indeed, *Anderson* acknowledges limiting the liberty interest "in reputation or privacy" to the context of a disclosure's effect on employment, education, licencing and insurance opportunities. *See Sylvester*, 385 F. Supp. 2d at 440 ("In *Anderson*, the court noted that the various interest[s] protected by the statute included an accused's right in the pursuit of employment, education, professional licensing and insurance opportunities." (internal quotation marks omitted) (quoting *Anderson*, 611 F. Supp. at 488)). Plaintiff does not allege harm to such an interest in his Complaint. In fact, the only harms Plaintiff alludes to are that his "employer learned of the rape case," (Compl. ¶ 44), and that "his fiancée saw and read the motion papers, upsetting her greatly and harming their relationship," (*id.*). Thus, Plaintiff fails to allege an injury of the type that § 160.50 was intended to protect. *See Schiller*, 2008 WL 200021, at *8 ("Even were I to find *Anderson* persuasive, I agree with *Grandal* and *Sylvester* that its application would be limited to cases where . . . the plaintiff has alleged 'deliberate indifference, gross negligence and acquiescence in a prior pattern of misconduct' . . . and 'specific allegations of harm to reputation . . . and the accused's employment, education, professional licensing and insurance

12

opportunities.'" (citations omitted) (quoting *Grandal*, 966 F. Supp. At 202; *Sylvester,* 385 F. Supp. 2d at 440)).

Finally, *Anderson* is factually distinguishable from the instant case, both in the egregiousness of Defendants' alleged conduct and the negative effect on Plaintiff. In *Anderson*, the defendants were alleged to have ignored court orders mandating the return of photographs of Anderson related to previous criminal charges and instead twice used those photographs to aid witnesses in identifying Anderson as the perpetrator of subsequent crimes, resulting in Anderson being incarcerated in lieu of bail until his case was dismissed without conviction. *See Anderson*, 611 F. Supp. at 486. This behavior reflected a deliberate pattern of indifference, whereas the single episode in the instant case evidences no such thing. *See Schiller*, 2008 WL 200021, at *8 (noting that *Anderson*, if even persuasive, is limited to cases where there is alleged deliberate indifference, gross negligence and acquiescence in a prior pattern of misconduct). As in *Schiller*, the misconduct and resulting harm Plaintiff has alleged in his Complaint do not rise to the same level as to merit a finding of a constitutional violation as in *Anderson*. Accordingly, this Court does not consider Plaintiff's request for injunctive relief.[3]

---

[3] While Plaintiff may not have plausibly alleged a constitutional claim, the Court is nonetheless troubled by the treatment and use of Plaintiff's sealed records. Clearly, enough information was improperly provided to counsel for Deskovic so that they could identify and contact Plaintiff. The Court hopes that the facts of this case do not become a pattern of disregard of the important protections § 160.50 provides.

III. Conclusion

For the reasons stated herein, Defendants' Motions To Dismiss are granted, and Plaintiff's Complaint is dismissed without prejudice.[4] Plaintiff is given 30 days to seek leave to file an amended complaint. The Clerk of Court is respectfully directed to terminate the pending motions. (Dkt. Nos. 31, 34.)

SO ORDERED.

Dated: February 27, 2014
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court dismisses the Complaint on the grounds that Plaintiff has failed to establish a violation of his right to due process, the Court has not addressed Defendants' separate request to dismiss on the ground that Plaintiff has failed to state a *Monell* claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). At this point, it suffices to say that Defendants' Motion raises serious questions about whether Plaintiff can plausibly state such a claim.